# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

ANGELA NAYLOR,

                    Plaintiff,

-vs-                                                    Case No. 2:09-CV-844-FTM-DNF

MICHAEL J. ASTRUE,

Commissioner of Social Security,

                    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Angela Clautrice Naylor ("Naylor"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits. The Commissioner filed the Transcript of the proceedings (hereinafter "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. The Court has reviewed the record, the briefs, and applicable law. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED**, pursuant to § 205 (g) of the Social Security Act, 42 U.S.C § 405 (g).

## I. BACKGROUND

### A. Procedural History

On February 7, 2007, Naylor filed an Application for Disability and Insurance Benefits ("DIB") and Application for Supplemental Security Income ("SSI"). (Tr. 88-99). In both applications Naylor alleged disability beginning June 6, 2005. (Tr. 85, 93). The Social Security Administration ("SSA") initially denied Naylor's claims on May 2, 2007 (Tr. 38-39), and upon reconsideration on July 31,

2007. (Tr. 49-50). Naylor subsequently filed a Request for Hearing by Administrative Law Judge on

August 20, 2007. (Tr. 55). On April 21, 2009, Administrative Law Judge ("ALJ") Irwin Bernstein held

a video hearing where Naylor presented her claims as the sole testifying witness. (Tr. 17-31). ALJ

Bernstein issued a decision denying Naylor's claims on June 29, 2009. (Tr. 5-16). On November 1,

2009, the SSA Appeals Council denied Naylor's request for review of the ALJ's decision. (Tr. 1-4).

Naylor seeks review of the final decision of the Commissioner of the SSA before this Court  pursuant

to Title II, 42 U.S.C. § 405 (g) and 42 U.S.C. § 1383 (c) (3). (Doc. 1).

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42

U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate support to a conclusion. Even if the evidence

preponderated against the Commissioner's findings, we must affirm if the decision reached is

supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir.

2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d

1520, 1529 (11th Cir. 1990)). In conducting this review, this Court may not reweigh the evidence or

substitute our judgment for that of the ALJ, but must consider the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329,

1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the district

court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law,

or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly

applied the law. *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The

Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a

disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

## II. REVIEW OF THE FACTS

### A. Background Facts

Angela Clautrice Naylor was born on March 11, 1971. (Tr. 85). Naylor stated that her mother was an alcoholic who emotionally abused her during her adolescence. (Tr. 128, 220, 304-05). She also claims that her step-father was a cocaine user who emotionally and physically abused her as well. *Id.* Naylor's family has a history of mental illness: her paternal aunt suffers from paranoid schizophrenia and her mother was allegedly diagnosed as bipolar and prescribed anti-depressants. (Tr. 125, 219, 305). According to Naylor's paternal father, Naylor began having suicidal ideation at the age of sixteen. (Tr. 146). She claims to have overdosed in response to a break up with a boyfriend when she was nineteen. (Tr. 193, 203).

Naylor is a high school graduate and completed more than one year of college. (Tr. 219). She has worked as an insurance agent, customer service representative, retail clerk, waitress, bartender, and most recently as a telephone solicitor. (Tr. 21-34, 109, 130-38). Because of her mental status, Naylor is unable to maintain relationships and has an inactive social life. (Tr. 219). She has a history of alcohol dependence and has admitted on several occasions to drinking daily in the past. (Tr. 193, 220, 244). She lives alone, is single, and has no children. (Tr. 219, 244, 304). Naylor's father provides her with five hundred dollars monthly as financial support. (Tr. 95).

Naylor claims that she has been disabled since June 6, 2005, due to an organic brain disorder, depression, anxiety, and panic attacks. (Tr. 83). Naylor was thirty-four (34) years old at the time of the onset of her alleged disability and thirty-eight years (38) years old on the date of the ALJ's decision in June 2009. (Tr. 14, 85).

## B. Summary of the ALJ's Decision

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months. 42 U.S.C. §§ 416 (i), 423 (d) (1); 20 C.F.R. § 404.1505. The ALJ must follow five (5) steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working and performing substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520 (a) (4) (i).  Second, if a claimant does not have a severe medically determinable physical or mental impairment for a qualified duration, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520 (a) (4) (ii). Third, if a claimant's impairments or a combination thereof do not meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, then the claimant is not disabled. 20 C.F.R. § 404.1520 (a) (4) (iii). Fourth, if in consideration of a claimant's residual functional capacity ("RFC") and past relevant work it is found that the claimant can still do her past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520 (a) (4) (iv). Fifth, if in consideration of a claimant's  RFC, as well as her age, education, and work experience, it is found that the claimant can make an adjustment to other work in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520 (a) (4) (v). The Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *see also Doughty v. Apfel* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

In the instant case, the ALJ ultimately found that Naylor is not disabled under sections 216 (i), 223 (d), or 1614 (a) (3) (A) of the Social Security Act. (Tr. 15). Following the codified five step analysis, the ALJ found that in regard to step one, Naylor has not engaged in substantial gainful activity since June 6, 2005, the alleged onset date of her disability. (Tr. 10). At step two, the ALJ found that Naylor suffers from the severe impairments of depression, anxiety, panic attacks, and substance induced mood disorder. *Id.*

At step three, the ALJ found that Naylor does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 11). The ALJ reasoned that because Naylor's impairments do not result in at least two "marked" limitations,[1] or one "marked" limitation and repeated episodes of decompensation, each for an extended duration, she does not meet the requirements of step three. *Id.*

At step four, the ALJ found that Naylor is unable to perform any past relevant work. (Tr. 14). In coming to this determination, the ALJ found that Naylor has the requisite RFC to preform a full range of work at all exertional levels, but has the following nonexertional limitations:

> [M]oderate limitations in ability to maintain attention and concentration for extended periods of time; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to respond appropriately to changes in the work setting.

---

[1] "Marked" limitations include: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.01.

(Tr. 14). The ALJ stated that  he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," along with opinion evidence in coming to this conclusion. *Id.*

At step five, the ALJ found that based on Naylor's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 15). The ALJ reasoned that even though Naylor's "ability to perform work at all exertional levels is comprised by nonexertional limitations . . . these limitations have little or no effect on the occupations base of unskilled work at all exertional levels." *Id.* The ALJ predicated his reasoning on section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. As such, the ALJ concluded that Angela Naylor is not disabled. (Tr. 15).

### C. Plaintiff's Medical History

 In a report by Claudia Zsigmond, Psy.D., Dr. Zsigmond noted that Naylor began suffering from depression as a teenager. (Tr. 219). When suffering from depressed moods, Naylor would experience hypersomnia, anhedonia, avolition, feelings of worthlessness and frustration, and suicidal ideation. *Id.* In 1994, Naylor was diagnosed with bipolar disorder and suffered from mixed manic symptoms that made her become hyperverbal, grandiose, argumentative, and made her overspend. (Tr. 219). Dr. Zsigmond's report indicated that another psychiatrist diagnosed Naylor with borderline personality disorder in 2005. *Id.* As a result, her symptoms included unstable interpersonal relationships, feelings of emptiness and loneliness, episodes of intense anger, and impulsive behaviors. *Id.*

The earliest dated assessment of Naylor's mental health on file in the Transcript is a letter by Dr. David G. Kelley, where he states that he saw Naylor for eight sessions of psychotherapy between April 3, 2002, and June 27, 2002. (Tr. 218). Dr. Kelly concluded that Naylor's primary impairment was

depression. *Id.*  He stated that Naylor "indicated a score of 9 out of 9" in view of the questions of the DSM-IV under Major Depressive Episode. *Id.* Dr. Kelley also noted that Naylor had issues with alcohol. *Id.*

The record also includes a series of Progress Notes completed by New Horizons of the Treasure Coast, Inc. ("New Horizons") in 2003. (Tr.178–92). In the original assessment by New Horizons, Naylor complained of anxiety and panic attacks (Tr. 178). The remainder of the New Horizon records are illegible.

On October 22, 2004, Jose Santiero, M.D., at the Ruth Cooper Center completed a Psychiatric Evaluation of Naylor in which he stated that Naylor was alert and oriented, calm, cooperative, coherent, and pleasant. (Tr. 193). Dr. Santiero also stated that Naylor was attention seeking, manipulative, and showed no symptoms of depression nor signs of mental illness. *Id.* Dr. Santiero diagnosed Naylor as having alcohol induced mood disorder, alcohol dependence, and borderline personality disorder. (Tr. 194).

In June 2006, Naylor was "Baker Acted" and admitted overnight to the Ruth Cooper Center because she was intoxicated and threatened to harm herself. (Tr. 203-04).  Mitchell A. Luchansky, M.D., completed a Psychiatric Evaluation of Naylor in which he stated that Naylor was intelligent, well spoken, and had a tendency to exaggerate symptoms. (Tr. 203). He found that she had lucid speech, no abnormal movements or behaviors, was alert and oriented, and did not suffer from delusions or hallucinations. *Id.* Dr. Luchansky diagnosed Naylor as having adjustment disorder, with mixed disturbance of emotions and conduct, and borderline personality disorder. (Tr. 204).

In December 2006, Naylor was "Baker Acted" again and admitted to the Ruth Cooper Center as a result of her intoxication and comments she made about harming herself. (Tr. 205-06). Clark

Dreilinger, M.D., completed a Psychiatric Evaluation of Naylor in which he stated that Naylor was appropriate and awake, alert, and oriented. (Tr. 205). He noted that at the time of the interview there was no evidence of suicidal ideation, her thought processes were normal, and she did not suffer from delusions or hallucinations. *Id.* Dr. Dreilinger diagnosed Naylor as suffering from substance induced mood disorder and alcohol abuse. (Tr. 206). Dr. Dreilinger ruled out bipolar disorder in his diagnosis. *Id.*

On May 19, 2007, Claudia Zsigmond, Psy.D., completed a Disability Evaluation of Naylor. (Tr. 219-21). Dr. Zsigmond observed that Naylor had good basic functioning, no gait abnormalities or gross motor coordination problems, and no fine motor shakes or tremors. As for Naylor's mental status, Dr. Zsigmond observed that:

> She appeared for the evaluation alert and well oriented, with no symptoms of psychosis, such as hallucinations, delusion, or ideas of reference. She did not show suicidal or homicidal tendencies . . . no severe short-term or long-term memory impairment. Speech and thought processes were logical and coherent. However she was slightly hyperverbal and tended to provide excessive information. She was however able to be redirected as needed. No articulation problems were noticed.  She had a somewhat labile affect and appeared in moderate mental distress.

(Tr. 221). Dr. Zsigmond determined that Naylor had an untreated mental illness and a history of alcohol abuse. *Id.* She suggested that Naylor would benefit from Alcoholic Anonymous and once Naylor became psychiatrically stabilized, she could resume employment. *Id.* Dr. Zsigmond diagnosed Naylor as suffering from bipolar II disorder, alcohol abuse, and borderline personality disorder. (Tr. 221).

On May 5, 2007, Timothy Foster, Ph.D., conducted a Mental Residual Functional Capacity Assessment of Naylor and found that she had moderate limits in ability to concentrate and work within a schedule and maintain regular attendance, in addition to moderate limits in ability to complete a normal workday or workweek without interruptions from psychologically based symptoms. (Tr. 223-25). Dr.

Foster also found that Naylor appeared to have moderate limits in her ability to relate appropriately with others and adapt to changes in the work place. (Tr. 224-25). Dr. Foster did not report any significant limitations in the other remaining RFC assessments. Dr. Foster concluded that Naylor was impaired by anxiety with depression, borderline personality, substance abuse, and substance induced mood disorder. (Tr. 239).

On May 8, 2007, Charles Barrios, M.D., completed a Psychiatric Evaluation of Naylor. (Tr. 243-46). Dr. Barrios, like Dr. Santiero previously, found Naylor to be cooperative, but manipulative. (Tr. 245). Dr. Barrios described Naylor as being completely coherent, with no suicidal or homicidal ideation, and no hallucinations or delusions. *Id.* He stated that she displayed good insight and that her judgment was well intact. *Id.* He then prescribed her Zoloft. On June 1, 2007, Barrios completed a Pharmacological Management Progress Note which stated that, "Without routine medical visits to ensure compliance and appropriate intervention, this client will show (or has in the past shown) significant cognitive, emotional and behavioral deterioration." (Tr. 241). His description of Naylor was similar to his May evaluation. Dr. Barrios continued to treat Naylor with Zoloft. *Id.* On both occasions, Dr. Barrios diagnosed Naylor with dysthymia and social anxiety disorder. (Tr. 241, 245).

On July 21, 2007, Arthur Hamlin, Psy.D., conducted a Mental Residual Functional Capacity Assessment of Naylor and found that she had moderate limits in ability to maintain attention and concentration for extended periods, to accept instructions and respond appropriately to criticism of supervisors, and to respond appropriately to changes in the work setting. (Tr. 247-48). However, Dr. Hamlin ultimately found that Naylor had the capacity to follow work-like procedures and instructions and the capability of relating appropriately to others in a structured setting. (Tr. 249). Dr. Hamlin also stated that Naylor's capability of adjusting to a work environment, though somewhat decreased, was not

compromised. *Id.* Ultimately, Dr. Hamlin found that Naylor was impaired by dysthymia, social anxiety disorder, and borderline personality disorder. (Tr. 254, 256, 258).

On August 27, 2007, M. Zenilde A.M. De Lima, M.D., conducted an evaluation of Naylor and found her to be alert, oriented, and her thought process linear. (Tr. 284). Her insight and judgement were reported as good. *Id.* Dr. De Lima diagnosed Naylor as suffering from dysthymia, social anxiety disorder, alcohol abuse and borderline personality disorder. (Tr. 285).  Dr. De Lima continued Naylor's prescription for Zoloft. *Id.* On October 19, 2007, Dr. De Lima completed a Pharmacological Management Progress Note, indicating similar findings regarding Naylor's mental status. (Tr. 282). In addition to her August 27, 2007, diagnosis, Dr. De Lima found that Naylor suffered from mood disorder, but ruled out bipolar disorder. (Tr. 283).  Dr. De Lima prescribed Naylor Depakote in addition to her prescription for Zoloft. *Id.*

Beginning on November 19, 2007, and ending on February 3, 2009, physicians from the Lee Mental Health Center completed  a series of Psychiatric Progress Note/Medication Management reports in regard to Naylor's mental status. (Tr. 265-81).  The notes written on the reports are mostly illegible. It does appear, however, that in the checklist sections of several of the reports it was noted that  Naylor's insight and judgment during these evaluations were considered fair during that period and she was often found to be depressed. (Tr. 265, 267, 269, 272, 279, 287, 289, 291, 295). In a November 19, 2007, Mental Status Exam, the reporting physician stated that Naylor had homicide ideation. (Tr. 279).

On February 5, 2009, Peggy Jones, M.S., completed a Comprehensive Psychosocial Evaluation of Angela Naylor. (Tr. 304-07). Jones concluded  that Naylor suffered from "Mood Disorder NOS, Anxiety, Bipolar, and PTSD." (Tr. 307). The record indicated that Jones met with Naylor seven additional times between February 20, 2009, and April 9, 2009. (Tr. 209-303). On February 26, 2009,

Jones "[a]dministered MCMI-III for diagnostic and treatment plan purposes" and found that Naylor

suffers from: "Schizoaffective Disorder, Adjustment Disorder with Anxiety, Bipolar Disorder (manic,

severe, without psychotic features), Borderline Personality Disorder, and Avoidant Personality Disorder

with Depressive Personality Traits and Negativistic (Passive Aggressive) Personality Traits." (Tr. 302).

On April 14, 2009, Jones completed a Questionnaire as to Mental Residual Functional Capacity in

regard to Angela Naylor. (Tr. 308-11). In that questionnaire, Jones reported that Naylor suffers from

extreme impairment in all categories of social interaction and sustained concentration and persistence.

(Tr. 308-10). Likewise, in the category of adaption, Jones stated that Naylor suffers from extreme

impairment in all but two sub-categories. (Tr. 310).[2]   In addition, Jones responded that Naylor's

condition would likely deteriorate if she were to be placed under stress, particularly that of job, and that

her impairment has lasted or is expected to last twelve (12) months or more. (Tr. 311).

In a March 20, 2009, letter by her attorney, Naylor wrote a note stating that her list of

medications taken at that time consisted of Lamictal, Hydroxyzine, and Trazodone. (Tr. 77).

### D. Issues Raised on Appeal

Naylor raises two issues on appeal. As stated in her Memorandum in Opposition to the Decision of the

Administrative Law Judge (Doc.16), they are: (1) The ALJ's decision was not based on substantial

evidence because the ALJ failed to consider the Mental RFC assessment conducted by Peggy Jones, a

licensed mental health counselor; and (2) the ALJ erred in failing to consult a vocational expert at step

---

[2] In response to question fourteen (14) , Jones reported that Naylor suffers from moderate
to marked estimated impairment of ability to be aware of normal hazards and take necessary
precautions. (Tr. 310).  In response to question sixteen (16), Jones reported that Naylor suffers
from mild to moderate estimated impairment of ability to maintain personal appearance and
hygiene. *Id.*

five of his analysis because "either his finding that claimant had severe impairments or his finding that claimant was moderately limited in her ability to perform full range of work mandates the conclusion that claimant was significantly limited in her basic work skills at sedentary work level." (Doc. 16).

### III. DISCUSSION

#### A. Whether the ALJ erred in failing to consider the medical evidence from Peggy Jones

As her first contention, Naylor argues that the ALJ's conclusion that Naylor is not disabled is not based on substantial evidence because the ALJ failed to consider the Mental RFC conducted by Peggy Jones, a licensed mental health counselor. Naylor contends that the ALJ may consider evidence of "other sources," such as mental health counselors, in making his decision. (Doc. 16) (citing 20 C.F.R. 404.1513 (a), (d), 416.913 (a), (d)). She adds that in some circumstances, evidence of "other sources" may be given more weight than "acceptable medical sources" if the "other source" has seen the claimant more frequently. (Doc. 16) (citing 20 C.F.R.  404.1527 (d) (2), 416.927 (d) (2); *King v. Astrue*, 2010 U.S. Dist. LEXIS 25901, at *21 (M.D. Fla. Mar. 19, 2010)). Thus, Naylor claims that the ALJ is not permitted to ignore the evidence from Peggy Jones. (Doc. 16). Defendant, on the other hand, contends that evidence of "other sources" is not entitled to the same deference as "acceptable medical sources" and that the ALJ is not required to refer to all available evidence in issuing his decision. (Doc. 18) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). As such, Defendant contends that even though the ALJ did not provide specific reasons for not including Jones' evidence, he provided substantial reasons for why he evaluated Naylor's RFC as he did. (Doc. 18).

It is the duty of the ALJ to "develop a full and fair record and evaluate all of the relevant evidence" to support his findings. *Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. Appx. 589, 590 (11th Cir. 2006). The ALJ must state specifically the weight accorded each item of evidence considered and the

reasons for his decision. *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that [the ALJ] considered [the] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater*. 67 F.3d 1553, 1561 (11th Cir. 1995)). According to 20 C.F.R. §§ 404.1513 (a), (d) , 416.913 (a), (d), medical evidence can be provided by "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (a), (d), 416.913 (a), (d). Acceptable medical sources include licensed or certified psychologists and other licensed physicians. 20 C.F.R. §§ 404.1513 (a) (1), (2), 416.913 (a)  (1), (2). Only acceptable medical sources can establish the existence of a medically determinable impairment, can give medical opinions, and can be considered a treating source, whose opinion may be entitled to controlling weight. *Reynolds v. Astrue*, 2009 U.S. Dist. LEXIS 40257, at *27 (M.D. Fla. Apr. 28, 2009) (citing SSR No. 06-03p (C.E. 2006), 2006 SSR LEXIS 5). "Other sources" include those not listed as "acceptable medical sources," whose evidence may be used to "show the severity of [a claimant's] impairment(s) and how it affects [his/her] ability to work." 20 C.F.R. §§ 404.1513 (d), 416.913 (d). The ALJ is not required to accept conclusions from sources designated as "other sources," and may place appropriate weight on the evidence based upon the medical evidence of record. *Reynolds*, 2009 U.S. Dist. LEXIS 40257, at *27-28 (citing SSR No. 06-03p (C.E. 2006), 2006 SSR LEXIS 5).

As noted by Naylor in her Memorandum, licensed mental health counselors are "not included in the list of 'acceptable medical source[s]' for Social Security disability determination." *Reynolds*, 2009 U.S. Dist. LEXIS 40257, at *27. However, it is the opinion of the SSA that due to "other sources" assuming a "greater percentage of the treatment and evaluation functions," the opinions of these sources

"are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in file." SSR No. 06-03p (C.E. 2006), 2006 SSR LEXIS 5. Thus, because it is required that all relevant evidence be considered when making a determination about whether an individual is disabled, "the case record should reflect the consideration of opinions from ["other sources"] who have seen the claimant in their professional capacity." *Id.* Several factors should be evaluated in considering evidence from "other sources": (1) the length and frequency that the source saw the individual; (2) the consistency of the opinion with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) the source's area of expertise in relation to the individual's impairment; (6) any other factors that may support or refute the opinion. SSR No. 06-03p (C.E. 2006), 2006 SSR LEXIS 5.

In the instant case, the ALJ failed to mention the evidence from Peggy Jones and neglected to provide a reason as to why he did so. It is clear from the record that Peggy Jones is a licensed mental health counselor who met with Naylor in her professional capacity to evaluate Naylor's mental health status on at least eight occasions, several more than any other individual physician on record. (Tr. 300-11). Jones conducted a series of written evaluations of Naylor based on the MCMI-III standard diagnostic test and completed a Mental RFC assessment. *Id.* The evaluations and the Mental RFC assessment relate directly to the issue of the severity of Naylor's impairment and her ability to work. Although Jones' evidence shows an impairment severity that is far greater than that which is recorded by other treating and examining physicians, her evidence is the most recent on record and was achieved by thorough evaluation. Thus, "while the ALJ was free to reject [the opinion of Peggy Jones], he was not free to totally ignore [her opinion] as [it] was provided by a medical provider who had an opportunity to meet with and observe Plaintiff's ability to perform work-related tasks." *King v. Astrue*, 2010 U.S. Dist.

-14-

LEXIS 25901, *21 (M.D. Fla. Mar. 19, 2010). Accordingly, this case will be remanded for the ALJ to

consider the medical evidence from Peggy Jones and give it the amount of weight, if any, that he deems

appropriate in accordance with SSR No. 06-03p.

**B. Whether the ALJ erred by not consulting a vocational expert at step five of the disability**

**evaluation**

Naylor contends that the ALJ erred by failing to consult a vocational expert at step five of his

analysis because either the ALJ's finding that Naylor had nonexertional impairments, that she had

severe impairments, or that she was moderately limited in her ability to perform a full range of work

leads to the conclusion that Naylor is significantly limited in her basic work skills. Naylor argues that

because the ALJ found at step two that she suffers from "severe" impairments, it follows that, by

definition, "severe" impairments are those which significantly limit a claimant's basic work activities.

(Doc. 16) (citing *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003); *Gray v.

Massanari*, 2001 U.S. Dist. LEXIS 6619, at *9 (S.D. Ala. Apr. 17, 2001)). In addition, Naylor claims

that the ALJ's conclusion that Naylor has six moderate nonexertional limits on her ability to work is a

limitation that is sufficient to significantly limit her basic work skills. (Doc. 16) (citing *Bankston v.

Comm'r of Soc. Sec.*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000); *Coleman v. Barnhart*, 264 F. Supp.

2d 1007 (S.D. Ala. 2003)). Defendant counters that the ALJ found that Naylor's ability to work at all

exertional levels was compromised by nonexertional limits, but these limitations "had little or no effect

on occupation base of unskilled work at all exertional levels." (Doc. 18) (citing Tr. 15). As such,

Defendant argues that the ALJ appropriately relied on SSR 85-15 to apply the Medical Vocational

Guidelines. (Doc. 18).

The ALJ has the obligation of developing a full and fair record regarding the vocational

-15-

opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). If it is

determined at step four of the ALJ's analysis that a claimant has impairments which prevent her from

performing past relevant work, the burden is then shifted to the Commissioner to "produce evidence to

show that the claimant is able to perform alternative substantial gainful work that exists in the national

economy." *Perry v. Astrue*, 280 Fed. Appx. 887, 894 (11th Cir. 2008) (citing *Cowart v. Schweiker*, 662

F.2d 731, 736 (11th Cir. 1981)). The ALJ may come to this determination in one of two ways: (1) the

ALJ may apply the Medical Vocational Guidelines ("the Guidelines"), 20 C.F.R., pt. 404, subpt. P, app.

2, § 204.00, which provide a matrix for jobs available in the national economy for someone with

claimant's characteristics; or (2) the ALJ may refer to a vocational expert who may speculate as to the

kinds of jobs an individual can perform based on her capacity and impairments. *Baker v. Comm'r of

Soc. Sec.*, 384 Fed. Appx. 893, 895 (11th Cir. 2010) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239-

40 (11th Cir. 2004)). It is generally sufficient for the ALJ to use the Medical Vocational Guidelines to

determine if jobs exist in the national economy that a claimant is capable of performing, and, in turn,

whether the claimant is disabled. *Id.* (citing *Phillips*, 357 F.2d at 1242). However, the ALJ must refer to

a vocational expert "upon finding either (1) that the claimant is not able to perform a full range of work

at a given residual functional level or (2) that the claimant has nonexertional impairments that

significantly limit basic work skills." *Id.* The Eleventh Circuit has held that "significantly limit basic

work skills" means that the limitations "prohibit a claimant from performing a 'wide range' of work at a

given work level." *Reliford v. Barnhart*, 157 Fed. Appx. 194, 195 (11th Cir. 2005) (citing *Phillips*, 357

F.2d at 1243)).  If substantial evidence supports the ALJ's determination that the claimant's

nonexertional impairments did not significantly limit her ability to perform specific types of work, then

reliance on the Guidelines is proper. *Perry*, 280 Fed. Appx. at 895 (citing *Sryock v. Heckler*, 764 F.2d

834, 836 (11th Cir. 1985)).

The ALJ based his determination to use the Medical Vocational Guidelines on his conclusion that Naylor's nonexertional limitations have little or no effect on her ability to perform unskilled work at all exertional levels. (Doc. 15). The ALJ referenced evidence of Naylor's daily activities and the medical evidence considered at earlier steps of Naylor's disability evaluation in coming to that conclusion. (Doc. 12-14). However, the Court previously concluded that the ALJ erred by failing to consider the medical evidence from Peggy Jones in the disability evaluation. Accordingly, the Court finds that the ALJ must first consider the medical evidence from Peggy Jones before a decision may be made as to whether sole reliance on the Medical Vocational Guidelines at step five of Naylor's disability evaluation is based on substantial evidence and therefore proper.

## IV. CONCLUSION

While remanding this case for further consideration, this Court expresses no views as to the outcome of the proceedings.

**IT IS HEREBY ORDERED:**

1. The decision of the Commissioner is **REVERSED AND REMANDED,** pursuant to § 205 (g) of the Social Security Act, 42 U.S.C § 405 (g), for the ALJ to consider the medical evidence from Peggy Jones and give it the amount of weight, if any, that he deems appropriate in accordance with SSR No. 06-03p.

2. The Clerk of Court shall enter final judgment consistent with this Opinion and Order and close the file. The final judgment shall state that if the Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. §406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this __18th__ day of March, 2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record